I'm very pleased to be here. This is my first chance to have an opportunity and I'm very pleased to have this one opportunity to speak on behalf of Dragomir Taskov. I've lived with this case almost four years and I think this case is a case that is one of the cases where constitutional law is implicated in many areas. The most fundamental issue in this case, I think, however, I'm going to look at backwards, was the sentencing issue. And starting backwards, the fundamental issue with the sentencing was the ironic situation in which the defendant was found not guilty of 30 of the counts of the indictment, yet the use of acquitted conduct resulted in him getting a sentence that was twice or three times what the other conspirators or other people charged in the larger offense received. Well, counsel, as I understand it, Mr. Jackson, the original recommended sentence was 135 months to 168 months, which was recommended by the probation folks, but the actual sentence was 82 months. That's exactly correct, Your Honor. And the trial judge made a finding that your client was the organizer of this plan. The judge didn't make that finding and I think it was based on the use of acquitted conduct because I think the facts were otherwise. And I think the jury, there were basically two versions of the facts. The defendant presented his version of the facts. His version of the facts were that he Even under his version of the facts, for the counts that he was convicted, wasn't there evidence to support that he I think the facts, if you assume that he was guilty of the four counts he was convicted of, one of them involved Mr. Lazarus and that was a false insurance claim. That is one of the counts that we contend was filed after the original indictment. It was a second superseding indictment that was filed only after he refused to plead guilty to the original 32 counts. And that one involved basically Mr. Lazarus and his false insurance claim. The other two involved two cars. Two cars, one involved two different counts, the possession and the other was bringing it across state lines. And then there was another car that involved Mr. Gurdjieff. But those two counts involved, I think, no more than three or four people total. But it was clear, if you look at the sentencing transcript, that the judge said he didn't believe Mr. Taskoff and it's clear that Judge Proe clearly believed that he was involved in the larger conspiracy. Even though it's clear that the jury But counsel, wasn't Judge Proe very careful to tie his findings, even though he did make numerous findings by a preponderance of the evidence? He also tied his findings to the counts of conviction. He did. However, if you just take those counts of conviction, if you compare what he got compared to what the others, if you take what, say, Mr. Dimitar Dimitrov, if you look at Mr. Dimitar Dimitrov's sentencing report, he is definitely listed in all the prior felony convictions. Taskoff had no felony convictions. He had one misdemeanor conviction for trespass. Yet he got double, double the sentence of Mr. Dimitrov. He'd never been in trouble before. He's 50 years of age. He got double the sentence. But the co-defendants, the co-defendants pled to a single count, correct? They pled to a conspiracy charge, which encompassed all the other counts. And why is there a difference between acquitted conduct and I think they're fundamentally equivalent. Doesn't our case in Mercado, U.S. v. Mercado, tell us that there's no Sixth Amendment violation when sentencing judges consider conduct underlying acquitted counts? Mercado says that exactly, and I believe Mercado is wrongly decided. And I believe Mercado is based directly on United States Supreme Court law, and I believe that Watts is wrongly decided. And this court, this court held differently than Watts, and the United States Supreme Court reversed this court, and I think the United States Supreme Court should reconsider Watts. I'm frankly telling the court that this court needs to re-examine Mercado, and hopefully the United States Supreme Court will re-examine Watts. And there's a number of reasons for that. Counsel, we can't, sitting as the three-judge panel, we don't have that power. If you wish to file a petition for rehearing in bank, maybe you can get the full court to take another look at it. But so far as this case is concerned, are we not bound by Mercado? I think that you can look at the, there is a distinction between this case and Watts. And there's language in Watts which specifically says in extreme circumstances or in circumstances that are exceptional circumstances, there's language in Watts, you can decide that you're not going to use acquitted conduct. That's language directly out of Watts. This is that kind of case where you have 30 counts where there is a not guilty decision. 30 counts where there's a not guilty decision. Almost 90% of the counts he was found not guilty by a jury. Now, there's lots of subsequent laws since the Watts decision. Lots of criticism of it in the commentaries, and I have to be frank with the court. Most of the decisions have been against or have supported Mercado in Watts. But there's many great dissenting opinions and there are many commentaries in the legal commentaries that are strongly critical of the Watts decision. And they're based upon fundamental Sixth Amendment rights. Now, I've cited them in my brief and I'd ask the court to carefully review those matters. But I can go into detail with them. Let's just break this down a little bit. You keep referring to acquitted conduct. I know it was referred to in the sentencing in determining at the time of the sentencing hearing to determine what the sentencing guideline calculation should be. And of course, it's the advisory sentencing guideline calculation. It's no longer mandatory, these guidelines. So the judge did his duty in terms of looking at all of the facts based on all of the potential adjustments upward for what happened. He seemed to tie the facts to what happened in these four counts. And ultimately, the question, I think, is whether his sentence was unreasonable. And in the end, the district court judge made clear that he was sentencing him for all of the conduct that was brought up at the sentencing hearing. And then also, and in particular, because he chose to take the stand and not tell the truth. And he said because of that, he was going to issue a sentence below the proposed sentencing guideline level, but double what one of his co-defendants got because he was really, the district court judge thought that that was appropriate to do with it and within his purview. And I'm just trying to see, how was it not? Well, that's like putting a trial tax on you. If you go to trial, you get a tax. The enhancement for perjury is usually two points under the sentencing guidelines. What he got is his sentencing guideline calculation turned out to be 33 after the judge took off two points because he was an alien and wouldn't get as good a prison conditions. The co-defendants that pled got a sentencing guideline calculation of about 19. And they pled guilty. They were found, and they also had, like Mr. Gurdjieff, who sold 11 cars in 7 days, he got a sentencing guideline calculation of 19. Tasked off was level 33. Now, that's a huge difference. Not two points for enhancement for perjury, but 14 levels higher. That's a tremendous difference. And, you know, in terms of what he did, much less lower in value, we tried to get the probation department to give us a breakdown of how you calculated the value. I sent them a letter. They didn't respond. The probation report looked like it had been written not by a probation officer who sat through the trial, but by the prosecutor. I don't know who wrote it, but it basically suggested that he was guilty of every single one of those counts. And I protested that because he was acquitted of most of the counts. We fought tooth and nail. Every one of these counts in the jury. But ultimately, you agreed, along with the prosecutor, that the court was able or that the law supported that the court review for preponderance of evidence. I'm wondering, though, whether or not, according to our case law, the judge should have had to look at the guideline calculation by a clear and convincing standard instead of preponderance. But nobody made that objection, including yourself. Well, I did object to them. I objected in the objections to the pre-sentence report. I didn't think they should counter that, and I objected to the calculation. You didn't specifically object that the district judge may have been using the improper standard by preponderance of the evidence, and it should have been by a clear and convincing. Did you? I objected at the sentencing, that I didn't think that they had established that. And, you know, I probably should have asked her. No, sir, I'm going to ask you very pointedly. Did you object to the standard that the district court was using? I read the transcript, and it looked like you were in agreement that it should have been preponderance of the evidence. That's what the case law was at the time. Well, and still, I mean, but no, actually, the case law appears to be maybe that in certain circumstances, when the sentence results in a disproportionate sentence based on enhancements, which I believe is what you're arguing, that the judge should have used a clear and convincing standard. But you never made that objection below, did you? Yes or no? I don't believe I made that objection. I did argue the sentence was disproportionate for other reasons. Thank you. Now, you know. Counsel, you may want to go on to some of your other issues. You have about eight issues that you've presented to us here. You know, the, I believe that there are two, basically, the pretrial issues all dealt with certain things. The thing was that we asked the court to review prosecutorial actions regarding motion to suppress, regarding prosecutorial vindictiveness, regarding the abusing speedy trial issues. The government claims we waived the speedy trial claim. I believe the case law is the defendant was always insisting on his speedy trial rights. Did the defendant clearly rely on the Sixth Amendment before the trial court? I don't know if the defendant knew whether it was Sixth Amendment or speedy trial. He said he wanted a speedy trial right, and he claimed it from the very first court appearance. And he demanded a speedy trial right. We asked for a severance, and we wanted to go separately as soon as possible. At the time of the severance, did you know that the co-defendants were going to enter changes of plea? Of course not, because they hadn't yet, but we wanted to be separated from them for a number of reasons. Number one, it would be prejudicial. Number two, our defenses were separate from them because, you know, my client insisted he was innocent and he was not connected with the conspiracy. As it turned out, he was found innocent of the conspiracy and innocent of basically all the charges dealing with the auto conspiracy charges. Well, is 21-month delay in trial truly excessive under the Sixth Amendment, especially when the defendant asked for three out of the four continuances? He asked for some of the continuances because we weren't getting a discovery from the U.S. Attorney's Office. But that counts against your Speedy Trial Act. I agree that the Speedy Trial Act is a weaker claim. But Sixth Amendment, it is not because they're related. And when you ask whether 21 months is a long time, if you're sitting in the North Las Vegas jail and you have medical problems, which the defendant did, it is a very long time. He was denied release pretrial. He was sitting in the North Las Vegas jail. And from the beginning, he was demanding most of the co-defendants were out. And they said, well, we want our trial continued. And they ended up pleading. And most of them testified against the defendant, or at least a number of them did. And they all got light sentences. But considering there were multiple defendants, there were 34 counts in the end, 30 counts initially, a lot of everybody's case was resolved except for the defendants before trial. I'm just trying to figure out if there's any case law you can point us to that supports that a 21-month delay is excessive. There's case law that says over a year it's presumptively prejudicial. But when it gets up to about two years, there's a – the Doggett case talks about prejudice. And basically there's four-factor tests. But the amount of prejudice that's involved is what's important. In this case, he was prejudiced because delaying the trial, the government ended up filing a second superseding indictment, adding additional charges. One of the additional charges ended up in a conviction. That was count 34. That wasn't filed until I think it was about a year and a half into the case when they added it. After all the other defendants pled guilty, all the other defendants pled guilty by July, I believe, of 2011, then the government filed an additional superseding indictment. We moved to dismiss that on grounds of vindictive prosecution. The court didn't even grant an evidentiary hearing. I argue there was a presumption, a presumption of vindictiveness, not just because they filed a second superseding indictment adding additional charges, but because of the timing of it. The timing is what is critical. The timing of the second superseding indictment, it was filed a couple years after they had knowledge of these things. Mr. Lazarus's insurance claim happened back a year and a half before this indictment was, or second superseding indictment was filed. The government knew or should have known about this at that time. Counsel, you're down to about three minutes of your remaining time. Do you wish to reserve? Yes, I'd like to reserve. I have a number of other points to make, but I'll save them for rebuttal. You have about three minutes in your rebuttal. I could go on for two hours probably. Thank you. I'm sure you could. Thank you, counsel. We'll hear from the United States. Good afternoon, Your Honors, and may it please the Court. Dave Lieberman for the United States. Mr. Lieberman. The jury in this case found Mr. Taskoff culpable in two different types of fraud schemes. The first was the bust-out scheme where associates would purchase cars on credit using false documents and credit applications. A number of these cars then made their way onto Mr. Taskoff's property, where he helped wash the titles, obtained counterfeit insurance policies, and either rent or sell the cars off to other people. The second scheme was where Mr. Taskoff helped the owners fraudulently report their cars as stolen to insurance companies in order to collect proceeds. Now, from the standpoint of the government, as well as what turned out to be in this record, where did Mr. Taskoff fit in this little enterprise? With respect to the first enterprise, the bust-out scheme, there were three individuals that were charged as over-daxed. They were the ones procuring the cars directly from the dealerships. Those cars then, within several weeks' time, all made their way through Mr. Taskoff, usually onto his property in his backyard. And then he was engaged in some aspect of helping them wash the titles, renting them on to other associates, sending them out of the country. Now, of course, as we acknowledge, the jury acquitted on a number of counts. The only two counts that the jury convicted on in the bust-out scheme, the cars were transferred out of Las Vegas into California to an associate of Mr. Taskoff. Now, Mr. Taskoff is not challenging the evidence underlying these convictions, just a series of pretrial and evidentiary rulings by the district court. I think all of these claims lack merit, and this Court should affirm. Let me walk through the trial and the sequence of Mr. Taskoff's claims. Counsel, can we just talk a bit, though, about those acquittals? Yes, Your Honor. While this panel is bound by Mercado, is there authority where there's such a ratio of acquitted counts to convicted counts? Almost 90 percent. Yes, Your Honor. I'm not aware of it, but I must be candid with the Court. I hadn't researched the issue because I don't think it was raised below, and it was not raised in the briefs. And so I'm happy to supplement the government's position with the 28J, but I haven't researched that in detail. We thought it was a preponderance of evidence standard. That's what we briefed it on. And the same substantive reasonableness review that this Court normally performs when a defendant claims that the sentence was inappropriate and unreasonable under the guidelines we think applies here. I'm focusing just on the question of reliance, though, on the acquitted conduct. And doesn't the large number of counts on which Mr. Taskoff was acquitted raise a red flag, particularly given the Court's – well, on the one hand, the Court did tie findings to the counts of conviction. The Court also made numerous findings by a preponderance of the evidence that appeared to go beyond reliance on the four counts of conviction. That is, I think, Your Honor's summary is correct. I think, however, Mercado deals with that in that the district court is absolutely allowed to consider acquitted conduct. That is the government's position. Again, I'd be happy to provide a more thorough answer, if you'd like, in a 28J, but I apologize that I'm not – I had not researched that issue before coming today. Turning to the sequence of Mr. Taskoff's claims that he is raising today, the first one that he – that my friend on the other side mentioned was the speedy trial claim, both statute and constitution. Mr. Taskoff waived the Speedy Trial Act claim by not raising it before the district court. This Court's case law is very clear, as well as the statute, 18 U.S.C. 3162a2, a failure to move for dismissal prior to trial constitutes waiver. But even if he had preserved it below, exactly zero days of the speedy trial clock elapsed in this case. Mr. Taskoff was arraigned on May 20, 2010. The last co-defendant was arraigned on June 25, 2010. Speedy trial clock synchronizes to the last defendant, and it was told on that same day, because Mr. Taskoff had pending motions, those motions take us up to the district court's orders of continuance, all of which were bounded in time and supported by adequate factual findings, which is what this Court's case law requires. In fact, three out of the four continuances were affirmatively requested by Mr. Taskoff. So I don't think he gets anywhere on the Speedy Trial Act claim. The same is true for the Sixth Amendment claim. First off, we're here on plain error because there was no invocation of the Sixth  There's no motion to dismiss. There was a request for an expeditious trial date, but that is not the same thing as raising a Sixth Amendment claim. And under the four Barco v. Wingo factors, all of those tilt against the Sixth Amendment claim. No timely invocation of a right. The delay here was not insignificant, 21 months, but the reasons for that delay all lie at the defendant's feet. He requested three out of the four continuances, and he was litigating his pretrial motions up through December of 2011, several months before the trial in this case. Finally, Mr. Taskoff has not shown any prejudice, no piece of evidence lost, no witness absconded in those 21-month period. So under a plain error review, I don't think he's entitled to relief. There was mention of alleged discovery violations here. The record does not bear that out at all. The event that I believe Mr. Taskoff is referencing was the fact where the government inadvertently disclosed discovery materials that it had already disclosed to the defense. And an accidental disclosure of additional materials is not a discovery abuse. We're not withholding any information from the defense. And it was quickly cleared up within several days' time with a phone call between the trial at AUSA and Mr. Jackson. The other alleged discovery abuses were, in fact, not abuses. We turned over materials on the Jenks Act timelines, as well as jailhouse calls by Mr. Taskoff when we received them. I already referenced the acquitted conduct issue. We think that Mercado fully addresses that, and this panel is obviously bound by that. As Judge O'Scanlan said, Mr. Taskoff can raise his claim to the ombud court. Finally, with respect to the guidelines calculations, the counts of conviction alone support the organizer-leader enhancement under the sentencing guidelines. Count 30, this is the 2008 Audi. Mr. Daskaloff got the car originally, transferred it to Mr. Taskoff, who then sold it to Mr. Mladenov. That's two. Counts 31 and 32, this is the 2008 Benz. Mr. Gorgiev transferred it to Taskoff, who transferred it to Mladenov. That's three. He had help from Danica Taskova. That's four. Finally, the 1999 Jaguar that Mr. Taskoff helped Mr. Lazaroff commit insurance fraud in, that's five. And, of course, even under Mercado, we could consider additional participants and easily get to the number five. But the organizer-leader and upward enhancement and the amount of loss, just those two alone, seem to disproportionately increase the sentence. So, again, I just want to ask you, in those circumstances, shouldn't there have been some review under a clear and convincing or consideration to review those enhancements under a clear and convincing standard instead of a preponderance standard? I don't think the case law supports that, but I'm going to go back and correct my error if I find that back at the office. Well, why don't you think it supports it then? Because I think Mercado is very clear that the- I'm not talking about Mercado. I'm talking about Riley. I think it's United States versus Riley and United States versus Jordan. Because we're talking about a couple of things here. One is calculating the guidelines and the appropriate procedure on how to do that. And I think our Ninth Circuit case law supports that when there is a disproportionate increase in the sentence, and I would think that what would happen, especially if the judge is looking at acquitted conduct, that there should be perhaps a stricter review and not just by a preponderance of the evidence. I think this was probably done in response to Watts. But so and then separately we have obviously what our case law is in Mercado, which allows the court to look at acquitted conduct. And I'm just curious what your response is to both of those. Well, if I could just cordon off one thing. I don't think this issue necessarily impacts the organizer leader enhancement because that was based on the jury's counts of conviction. So it really would only affect the calculation of loss that- Which was a 14-count increase. Yes, Your Honor. So the government's position as I stand here today is that the preponderance of the evidence standard, that is what the district court applied. If I'm wrong on that, then perhaps Mr. Taskoff would be entitled to some resentencing. But I should also point out that the district court took into account this issue of disproportionality. As one member of the panel discussed, his lower guideline range was 135, and the district court departed downward out of concern that this sentence was out of alignment with the other participants in this case. And so the district court had this on its mind, went from 135 to 82. And so at least at the end line sentence, it's substantively reasonable. And I know my friend on the other side has argued that Mr. Taskoff's sentence is by far and away above the other participants in this case. But those other participants pled guilty, assisted in the government's investigation, helped the government recover the cars. Mr. Taskoff did not participate in that investigation. He took the stand, and the district court found that he was untruthful. So the 82 months, at least at the end line, is substantively reasonable. But if I am wrong on this standard of review, then perhaps Mr. Taskoff would be entitled to resentencing. And it seems like, correct me if I'm wrong, that the 82 months was imposed after the district court reviewed all of the conduct for which he was convicted, plus the relevant conduct, and then in particular because of the obstruction or because the district court felt strongly that the defendant had taken the stand and not told the truth. Is that correct? Yes, Your Honor. And so, therefore, he doubled the sentence from what the other co-defendant of the co-defendant had the highest sentence. Is that appropriate? I actually look at it the other way. I think based on the factors in this case, the court went below what the guidelines said and decreased based on some of the points in Mr. Taskoff's favor. And I think it was the sentence was entirely reasonable and appropriate. I should also point out here that the issue of whether it's clear or a preponderance of review was not raised below and was not raised in the defendant's brief, so we're here under plain error. And under that stringent standard, it's tough for Mr. Taskoff to show that there was a substantial injustice in this case entitling him to relief. Now, Mr. Taskoff has raised a number of other claims, which I am happy to address, but if the panel has no more questions, I'm all ears. Can I just ask about vindictive prosecution? I know you assume the burden hasn't shifted to you, but just for sake of argument, since we're here, assume the burden has shifted to you. Why did the government wait so long to file the second superseding? Because the plea negotiations failed in this case, and I should think it's important to note the adding of the two new mail counts in the second superseding indictment did not change Mr. Taskoff's statutory sentencing exposure. It was just a route that we used, another route that we would use at trial, to prove up guilt in this case. Compare that to this court's case law in Kent, in Gomez or Duneau, where after plea negotiations failed, the prosecutors then came back and filed an 851 charge based on the defendant's prior convictions, drastically enhancing the defendant's statutory maximum in those cases. And this court said, we are not going to entertain prosecutorial vindictiveness in the plea bargaining back-and-forth setting. Unless the Court has any more additional questions, I'd ask that it affirm the judgment below. No further questions. Thank you, counsel. Mr. Jackson, you have about three minutes reserved. Just a couple of things. The best argument I have on the right of the jury, I think was said by Judge Proulx, ironically, when he addressed the jury. He talked about the fundamental importance of the jury, and he talked about his speaking to the Georgian judge, and the Georgian judge said, well, in our country, a jury doesn't work because the government really wouldn't trust the juries. And he said, well, you know, we have a long history in our country, and 200 years ago we had a revolution and we had the Constitution, because in our country we really didn't trust the government. So juries were there to protect from overreaching, is basically what he said to the juries. And, ladies and gentlemen of the jury, you're important. What you do is important. Now, when we have a sentencing, if the judge usurps the jury's function, if his sentence makes what we get from the jury really not meaningful, then there's really not much purpose to the trial. We spent thousands of hours in preparation on this trial, both sides, maybe a million dollars by the government. I didn't spend that much in my preparation, but it was an awful lot of work. After the trial, a member of the U.S. Attorney's Office met me out in front of the courthouse one day and said, wow, you did a really good job. You really got a great verdict. Well, it was a pyrrhic victory, because in the victory, my client got twice as much time as the guy that was considered the worst guy, the worst character, Mr. Dimitroff. Now, Mr. Dimitroff pled guilty, and he didn't cooperate. He didn't testify for the government. He had a prior felony conviction, but he only got 41 months. My guy got 82 months. But, again, because of Mercado, you're not pointing this to any other Ninth Circuit authority. No. You concede your only hope here is online. Is overruling Mercado and Watts. I'm saying, frankly, there's something wrong with it. You know, as Potter Stewart said, looking at obscenity, you know, I know it when I see it. You know, I've done lots of trials, and when you win, you think, well, I got a good verdict. But if you win and you end up getting a much worse result than pleading guilty, it makes you, what are you going to tell a client? Don't go to the federal court, and if you win 90 percent of the charges, you're going to get twice as bad as the guys that plead guilty. It doesn't make sense. Now, I'll have to make that argument at a higher court probably. I'll be frank and candid with the court and say I looked at all the law. Most of it's against me. But there's a lot of people criticizing this law. There's a lot of people saying we need to rethink this. Watts left a tiny opening. A tiny opening saying in extreme cases you can look at this and you can say maybe we should look at this and say this extreme circumstance is such we shouldn't use acquitted conduct here to enhance the sentence. And that's what I'm asking you to do. Thank you, Mr. Jackson. That red light in front of you tells you your time has expired. Thank you very much. The case just argued will be submitted for decision.
judges: Mueller, O'scannlain, Murguia